# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID L. JACKSON, | ) | 1:10-cv-00558 GSA |
| | ) | |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## BACKGROUND

Plaintiff David L. Jackson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 & 10.)

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for disability benefits on November 20, 2004, alleging disability beginning October 2004. AR 58-61. Plaintiff had also previously filed an application for supplemental security income benefits. *See* AR 13. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 43-48, 50-56. ALJ Fenton Hughes held a hearing on October 4, 2007, and issued an order denying benefits on November 23, 2007, finding Plaintiff was not disabled. AR 10-21. On January 29, 2010, the Appeals Council denied review. AR 4-6.

**Hearing Testimony**

ALJ Hughes held a hearing on October 4, 2007, in Bakersfield, California. Plaintiff appeared and testified; he was assisted by attorney Geoffrey Hayden. Medical Expert ("ME") Irwin Weinreb and Vocational Expert ("VE") Jeff Beeman also testified. AR 204-236.

Plaintiff was forty-two years old at the time of the hearing. AR 207. He lives with his wife and six children. AR 217. He is five feet three inches tall and weighs 239 pounds. AR 207. Although Plaintiff has a driver's license with a only a restriction to wearing corrective lenses, he no longer drives because his vehicle in inoperable. AR 207-208. Plaintiff's vehicle, when operable, is automatic, yet it is not specially equipped to accommodate his prosthesis. Rather, he uses his left leg to operate both the accelerator and the brake. He cannot drive a vehicle with a manual transmission, and would not be permitted to drive a bus or truck. AR 217.

Plaintiff last worked in April or May of 2004 performing general office and clerical type duties. He was not required to perform any heavy lifting in that position. AR 208. He worked for two or three months, having gained the position through the Welfare to Work program. AR 209. When he was asked why he left, Plaintiff indicated he could not recall, "but it had something to do with the training" he was receiving. AR 208. When he was asked whether there was a physical reason he could not continue to perform that type of work, Plaintiff replied that he had fallen over loose carpeting and slipped in water on another occasion. AR 209.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Before the aforementioned position, Plaintiff also worked as a file clerk at a temporary agency between 1998 and October 2001. He left that position because he could not walk at that time. His back was weak and he could not stand for six to eight hours during a work day, and one of his legs was giving out. AR 209.

When he was asked why he could not work now, Plaintiff indicated he had "too many medical problems, lower-back problems, [his] left leg, and both of his wrists." AR 210. These conditions have not improved. AR 216.

In 1967, Plaintiff's right leg was amputated above the knee and he wears a prosthesis. AR 210. The amputation was required because he was born without "a front bone and kneecap" in the right leg. AR 216. The prosthesis comes loose at the knee joint and/or foot, and is unstable, causing him to "fall down a lot." AR 210-211. It fits well at the stump, but were "the sock to go inside [the] prosthesis that supports [his] stump, [he] could have skin tears, which do lead to bleeding." AR 211. Plaintiff does not believe his prosthesis is unequal, causing one hip to be higher than the other as indicated by an examining physician, but he could not offer any other reason for the inequity. AR 211.

Plaintiff indicated he can walk about a one-half block before needing to stop. From time to time he will use a cane or crutches, with the same result: one-half block. AR 211. When he was asked how long he could stand before needing to sit down, Plaintiff replied "less than [ten] minutes." AR 211-212. He can sit for twenty minutes or so before needing to change positions. AR 212. He can lift less than ten pounds without difficulty. AR 212. He cannot kneel, stoop or squat without pain. AR 212.

When he was asked to describe a typical day, Plaintiff indicated that he gets up in the morning and has coffee and breakfast. Once in a while he will check his email, but not every day because he finds it too painful. He often lies down on his stomach to relieve the pain.[3] AR 215. He does not do any housework, cooking or grocery shopping. AR 215. He can shower and dress, although once in a while he requires assistance with putting on his shoes. AR 215.

---

[3] Plaintiff also testified that he lies down and elevates his leg during the course of a day. AR 214.

1  Plaintiff stated that he has no social life and his exercise is limited to walking one-half block.
2  AR 215.

3        Plaintiff is unable to sleep through the night.  The pain keeps him awake and sleep apnea
4  causes him to stop breathing.  AR 212, 214.  Plaintiff feels the pain in his "waist" and lower
5  back.  AR 212-213.  He takes Tylenol and 800 milligrams of Ibuprofen.  AR 213.  When Plaintiff
6  was asked to rate his everyday pain on a scale of 1 to 10, he indicated the pain was a "9."  He has
7  suffered from this type of pain since high school.  AR 214.

8        Plaintiff takes a prescription medication to treat diabetes and he also takes baby aspirin as
9  a preventative.  AR 213.  At the time of the hearing, Plaintiff was also taking an antibiotic
10 medication for an infection near the stump area of his right leg.  AR 213.  With regard to
11 medication side effects, Plaintiff indicated that Soma caused greater pain on his left side; as a
12 result, it was discontinued.  The Glucophage, prescribed to treat diabetes, also caused him pain
13 and was discontinued by his physician.  AR 214.  Plaintiff was diagnosed with diabetes about
14 two years ago and the condition is controlled with medication.  He occasionally experiences
15 double vision however.  AR 213.  Howard Jackson, M.D., has been Plaintiff's treating physician
16 for about three years.  AR 215.

17       ME Weinreb asked Plaintiff about the impact of his condition on his activities of daily
18 living.  Specifically, the ME asked Plaintiff about an evaluation prepared in February 2005 when
19 Plaintiff indicated he was able to perform some household chores, including vacuuming, laundry,
20 and washing dishes, stopping from time to time to take a break.  Plaintiff indicated he can no
21 longer do those activities.  AR 217-218.  Further, Plaintiff denied performing automotive repairs
22 on his vehicle, and indicated that his father-in-law does so.  AR 218.  When asked specifically
23 about a reference to Plaintiff himself having fixed the brakes on his car in September 2005,
24 Plaintiff indicated that he had forgotten about that occasion, and that it was a single exception.
25 AR 218-219.

26       With regard to difficulty changing positions, ME Weinreb asked Plaintiff to describe the
27 trouble he experiences when he goes from sitting to standing and vice versa, and from lying to
28 sitting and/or standing.  AR 219.  Plaintiff indicated he must change positions slowly, and he

occasionally has difficulty with his left foot. If he stands too long, the pain in his foot causes "a curvature." AR 219. The left foot has been a problem for a couple years, but he does not wear a special shoe or insert. AR 219-220, 222. If he were to try to crouch, Plaintiff indicated that he is unable to get up from that position and would require assistance. AR 220. He has trouble getting up from the toilet seat, and does so slowly, and with the assistance of crutches. AR 220. Plaintiff has seen a physician at the Valley Institute of Prosthetics within the past year for a repair to the knee section of his prosthesis. However, the adjustment did not help his ambulation or ability to change positions. AR 221.

Plaintiff replied to the ME's inquiry about any trouble with the upper extremities by indicating that both of his arms, or more particularly his wrists, are painful. The morning of the hearing he "could barely move [his] wrists" and hands. AR 221-222. His wife brushes his hair for him, but he is able to wash his face. AR 222. He is right-handed and uses an electric toothbrush. Plaintiff denied any difficulty putting on his glasses with either his left or right hand. AR 222.

ALJ Hughes asked ME Weinreb to summarize his understanding of Plaintiff's case. AR 223-225. After doing so, the ME concluded that Plaintiff had the residual functional capacity ("RFC") to frequently lift and carry between five and ten pounds, occasionally lift and carry ten pounds, could stand and walk about two hours in an eight-hour day with regular breaks, could sit for six hours in an eight-hour day with regular breaks, and had the ability to occasionally stoop, kneel, and climb stairs or ramps, but should avoid working on uneven ground or at unprotected heights, and may not climb ropes, ladders or scaffolds. AR 226-227. When asked by Plaintiff's counsel about Dr. Jackson's opinion that Plaintiff is "disabled because of gait problems caused by strain of the contralateral leg" (AR 232) and how that applies to Listing 1.05, Dr. Weinreb indicated that his review of Dr. Jackson's examination notes from October 2004 to June 2007, reveals the notes did not specifically address or support that statement. AR 232-233.

VE Jeff Beeman indicated that Plaintiff's most recent past work was performed at the light, rather than sedentary, level. AR 228. Therefore, Plaintiff cannot perform his past relevant work. AR 228.

The VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who has the limitations identified by ME Weinreb. VE Beeman testified that there were "literally dozens of sedentary jobs" available to such an individual. AR 288. When he was asked to provide one example with substantial numbers, VE Beeman identified the position of receptionist, DOT[4] 237.367-038, sedentary, SVP[5] of four, with approximately 400,000 positions available nationwide. AR 229. At the request of Plaintiff's counsel, the VE was asked whether such an individual with similar limitations plus an additional limitation of the ability to sit and stand at will, could perform sedentary work. AR 229-230. VE Beeman indicated that the "sit/stand at will" limitation would erode the available job base by twenty-five percent. AR 230.

**Medical Record**

The entire medical record was reviewed by the Court. AR 92-201. The medical evidence will be referenced below as necessary in this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-21.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2004. AR 15. Further, the ALJ identified status post above right knee amputation, diabetes mellitus, obesity and back pain as severe impairments. AR 15. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 15.

Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC to perform sedentary work with the following considerations: ability to frequently lift five to ten pounds and occasionally lift ten pounds; ability to stand or walk two hours in an eight-hour day but not on uneven ground; ability to sit for six hours in an eight-hour day; ability to occasionally

---

[4] "DOT" refers to the Dictionary of Occupational Titles.

[5] "SVP" refers to specific vocational preparation.

1 stoop, kneel, or climb stairs or ramps; and the inability to use ropes or ladders, be required to
2 balance, or be exposed to hazards.  AR 16-20.
3    Next, the ALJ determined that Plaintiff could not perform his past relevant work.  AR 20.
4 Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ
5 determined there were jobs that existed in significant numbers in the national economy that
6 Plaintiff could perform.  Specifically, the ALJ found that Plaintiff could perform the work of a
7 receptionist, as a representative occupation.  AR 20-21.

## SCOPE OF REVIEW

9    Congress has provided a limited scope of judicial review of the Commissioner's decision
10 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
11 this Court must determine whether the decision of the Commissioner is supported by substantial
12 evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"
13 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
14 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
15 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at
16 401.  The record as a whole must be considered, weighing both the evidence that supports and
17 the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,
18 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must
19 apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
20 This Court must uphold the Commissioner's determination that the claimant is not disabled if the
21 Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
22 substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
23 Cir. 1987).

## REVIEW

25    In order to qualify for benefits, a claimant must establish that he is unable to engage in
26 substantial gainful activity due to a medically determinable physical or mental impairment which
27 has lasted or can be expected to last for a continuous period of not less than twelve months.  42
28 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

7

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ failed to assess whether Plaintiff met Listing 1.05, and failed to give clear and convincing reasons to reject his subjective complaints. (*See* Doc. 17.)

## DISCUSSION

### A.  *Listing 1.05*

Plaintiff complains the ALJ erred by failing to find that Plaintiff met the requirements of Listing 1.05. (Doc. 17 at 6-8.) The Commissioner contends the ALJ properly found Plaintiff did not meet or equal a listing impairment, including Listing 1.05. (Doc. 21 at 6-9.)

The listings of impairments describe impairments "that are considered severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. § 416.925(a). Most of these impairments are permanent or expected to result in death. *Id.* For all other impairments, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months. *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry. 20 C.F.R. § 416.920(d).

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets *all* of the medical criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1526(a) & 416.926(a). Under the law of this circuit, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any

listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005); *see Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001) (in distinguishing *Marcia v. Sullivan,* 900 F.2d 172 (9th Cir. 1990), the court determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment).

Listing 1.05 provides as follows:

> 1.05 Amputation (due to any cause)
> A. Both hands;
> or
> B. One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months;
> or
> C. One hand and one lower extremity at or above the tarsal region, with inability to ambulate effectively, as defined in 1.00B2b;
> or
> D. Hemipelvectomy or hip disarticulation.

As referred to above, section B2b of Listing 1.00 provides, in relevant part:

> B. Loss of function.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> 2. How we define loss of function in these listings.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> b. What we mean by inability to ambulate effectively.
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's

    home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

    Here, ALJ Hughes concluded that Plaintiff did not meet or equal any listing impairment at step three. AR 15. The record supports his finding.

    As pointed out by the Commissioner, despite Plaintiff's testimony to the contrary (discussed *ante*), the medical evidence fails to establish that Plaintiff cannot effectively ambulate. More specifically, the records from Plaintiff's treating physician do not support a finding that Plaintiff cannot sustain a reasonable pace over a sufficient distance. *See* AR 172-201. Moreover, examining orthopedist Min-Ning Huang, M.D., prepared the following findings after his examination of Plaintiff on February 27, 2005:

> The claimant has good coordination but his gait is not normal. It looks like when he walks that his right hip is always higher than the left hip. It is possible that his prosthesis on the right leg is longer than the left leg, so he has to lift up his hip in order to compensate for the longer prosthesis.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> . . . He has some difficulty getting up from a seated position. He has to support himself with his arms. When he gets on and off the examination table he has to do it slowly. His gait is abnormal with the right part way elevated. He seemed to be doing that purposely for the longer right lower extremity prosthesis.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Based on those objective findings, I would say that the claimant should be able to stand *and walk* for about two hours in an eight-hour day.

AR 154-156, emphasis added. The state agency physician's opinion is similar. AR 161-168. These reports do not indicate anything other than an abnormal gait, however, an abnormal gait due to the use of a prosthesis does not equate to an inability to ambulate. This Court's review of the medical record did not identify any evidence of "extreme limitation of the inability to walk" as defined in Listing 1.00B2b.

    Simply stated, there is no medical evidence to support a finding that Plaintiff cannot effectively ambulate, or that Plaintiff's severe impairment otherwise meets or equals Listing 1.05. Hence, Plaintiff has not meet his burden. *Sullivan v. Zebley*, 493 U.S. at 530; *Tackett v. Apfel*, 180 F.3d at 1099. In sum, the ALJ's finding is supported by substantial evidence and is free of legal error.

B.     *Plaintiff's Credibility*

Next, Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons to reject his subjective complaints. (Doc. 17 at 8-9.) The Commissioner asserts the ALJ provided several clear and convincing reasons for finding Plaintiff less than credible. (Doc. 21 at 9-11.)

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ may consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635.

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of status post above the right knee amputation, diabetes mellitus, obesity and back pain. AR 15. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601. It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d at 755). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Here, after summarizing Plaintiff's testimony and the medical record (AR 16-19), ALJ Hughes made the following findings:

> The undersigned does not find credible the extent of limitations to which claimant testified at the hearing. Specifically, the undersigned notes that in his January 19, 2005 Daily Report claimant reported that if he carried heavy objects after about two minutes he had a sharp pain in his lower back and left leg. On an average day, he could perform light dusting, light sweeping, light moving of furniture, light cleaning [of] bathrooms. He could walk four blocks, but thereafter had foot pain as well as back pain. He could lift anything under 10 pounds as long as it was not continuously. He grocery shopped with the assistance of his children. Claimant reported similar activities to Dr. Huang. Despite his complaints of frequent falls due to weakness and giving [out] of his left leg this is not corroborated in the numerous clinic records. The consultative orthopedic examiner found no evidence of muscle spasm and claimant's low back and x-rays in February 2005 were normal. Earlier x-rays in 2004 showed only mild degenerative changes. While Dr. Huang opined that claimant appeared to have possible lumbar radiculopathy, and back pain exacerbated by obesity and an ill fitting right lower extremity prosthesis, claimant was still able to change the brakes on his car four months earlier.
> The undersigned disagrees with Dr. Jackson's opinion that claimant is disabled because this is an opinion reserved to the Commissioner. Dr. Jackson

> notes that claimant has chronic balance instability, and gait abnormality and strain of the left leg and a "lumbar condition." However, there is no evidence in the clinic records of problems with the right leg stump but for one occasion when claimant had a lesion/skin irritation. There is no evidence that claimant has been seen for adjustment of his prosthesis, which typically occurs every three years according to his statements. As to the effects of his obesity this exacerbates a lumbar lordosis and strain on claimant's left leg, but there is no evidence that this condition, either singly or in combination with claimant's other medical conditions, precludes him from performing his activities of daily living as well as the wide range of other activities set forth in the Daily Report and orthopedic examination. There is no evidence in the medical record that claimant's impairments have deteriorated or that he has objective clinical findings of a worsening of his overall medical condition. For this reason, the undersigned accords greater weight to the opinion of the medical expert, Dr. Weinreb, [than] to that of the treating physician, Dr. Jackson. The undersigned also accords substantial weight to the opinions of Dr. Huang and the state agency examiner for the same reasons.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

AR 19-20, internal citation omitted. The ALJ did not err. He provided clear and convincing reasons for rejecting Plaintiff's testimony. ALJ Hughes identified which testimony he found not credible and what evidence suggested the complaints were not credible. *Mersman v. Halter*, 161 F.Supp.2d at 1086. He properly considered prior inconsistent statements concerning Plaintiff's symptoms (statements in the daily report and to the consultative examiner), other testimony that appeared to be less than candid (changing the brakes), and the observations of the treating and examining physicians. *See Smolen v. Chater*, 80 F.3d at 1284. He noted a lack of medical evidence to support deterioration of Plaintiff's overall medical condition and a lack of evidence regarding Plaintiff's purported frequent falls. These were proper considerations and amount to clear and convincing reasons to reject Plaintiff's testimony. *See Light v. Soc. Sec. Admin.*, 119 F.3d at 792. Moreover, the ALJ was not required to believe every allegation made by Plaintiff. *Orn v. Astrue*, 495 F.3d at 635; *Fair v. Bowen*, 885 F.2d at 603.

This Court finds that ALJ Hughes' credibility findings convincingly justify his rejection of Plaintiff's pain testimony. *Fair v. Bowen*, 885 F.2d at 602. Therefore, his findings are supported by substantial evidence and are free of legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, David L. Jackson.


IT IS SO ORDERED.

    Dated:   **July 26, 2011**                              **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE